UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BOBBI LEE, individually and on behalf of all others similarly situated | § § § |
| Plaintiff, | § NO. 1:16-cv-00946-MRB |
| vs. | § § |
| CAREGIVERS FOR INDEPENDENCE, LLC, et al., | § § § |
| Defendants. | § § § |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

Defendants' Motion for Judgment on the Pleadings (Doc. 21), and Plaintiff's Motion for Conditional Certification (Doc. 16), present the following single dispositive legal issue: Is January 1, 2015 the effective date of 29 C.F.R. §552.109 (the "Regulation")? Defendants, citing distinguishable cases, contends the effective date is January 1, 2016. Plaintiff, for the reasons that follow, submits that the effective date has always been January 1, 2015, and that Defendants' obligation to comply with the overtime requirements of the FLSA regarding its support staff employees who provide companionship services began January 1, 2015.

Plaintiff agrees with Defendants that she performed companionship services for Defendants' clients. As such, Plaintiff is covered by the Regulation. Plaintiff further agrees that prior to January 1, 2015, she was exempt from the overtime requirements of the FLSA. However, at issue is whether Plaintiff was misclassified as exempt from the overtime requirements of the FLSA from January 1, 2015 to the date of her last employment on September 29, 2015.

I.  HISTORY OF THE REGULATION

The Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.*, was first passed by Congress in 1938 and obligates employers to pay covered employees a minimum wage for all hours worked and overtime wages for hours worked in excess of 40 in a work week.  FLSA at §§206, 207.  In 1974, Congress extended FLSA coverage to "domestic service" workers but created an exemption from the minimum wage and overtime requirements for "any employee employed in domestic service employment to provide companionship services for individuals who 'because of age or infirmity' are unable to care for themselves." *Id*. at §213(a)(15).  The Secretary of the Department of Labor was authorized by Congress to define the terms of this exemption through regulation.  The DOL exercised that authority in 1975 by issuing the regulations at 29 C.F.R. Part 552 to define the scope of the "companionship exemption."  Section 552.109 of the 1975 Regulations established that the exemption applies to employees "who are engaged in providing companionship services" and "who are employed by an employer or agency other than the family or household using their services."  Also, the exemption applied to "any employee who is employed in domestic service in a household or who resides in such household." *Id.* at 213(b)(21).  The term "domestic service employment" refers to services of a household nature performed by an employee in or about a private home and includes cooks, housekeepers, caretakers, chauffeurs and babysitters employed on other than a casual basis.  40 Fed. Reg 7405 (codified at 29 CFR §552.3).  Accordingly, the exemption applied to home care workers who provided "companionship services" and "in house" domestic services who were employed by third parties.

These regulations remained generally unchanged until the DOL published a notice of proposed rulemaking to revise the FLSA domestic service regulations in December, 2011.  76 Fed. Reg. 81190 (Dec. 27, 2011).  The new regulation addressed the evolution of companionship and

2

domestic service employment since the inception of the exemption in 1975. *Id*. at 81190-92. Today, there are over 100,000 businesses providing care and support to the disabled and elderly and more than 30,000 home health agencies. There are over two million home care workers in the United States who generally work in poor conditions and earn a median hourly wage from $9.83 to $10.28.[1]

In 2013, annual average earnings for this workforce was only $18,598.00.[2] Industry revenues have grown at a rapid rate while workers' real wages have declined significantly.[3] The earnings of these workers remain among the lowest in the service industry, impeding efforts to improve both jobs and care. DOL found that the lack of FLSA protection harms direct care workers who depend on wages for their livelihood and that of their families, as well as the individuals receiving services who depend on a professional, trained workforce to provide high quality services. 78 FR 60454-55 (Oct. 1, 2013). Recognizing this goal, the DOL published a final regulation on October 1, 2013, which eliminated the overtime exemption for third-party employers of home care workers. *Id.* As part of the rule-making, DOL weighed public comments on when the new regulations should go into effect and concluded that an effective date of January 1, 2015 struck the appropriate balance between interested employers and home care workers. *Id.* at 60455, 60494-95.

On June 6, 2014, several trade associations with members who employ home care workers filed an Administrative Procedure Act ("APA") challenge to the third-party employer regulation in D.C. district court. *Home Care Assn. of America v. Weil*, 1:14cv967. On December 22, 2014,

---

[1] BLS Occupational Employment Statistics, 2015. The figures noted refer to median hourly wages for the occupations personal care aides and home health aides, respectively.
[2] *Giving Caregivers a Raise: The Impact of a $15 Wage Floor in the Home Care Industry*, (National Employment Law Project, February 2015), http://www.nelp.org/content/uploads/2015/03/Giving-Caregivers-A-Raise.pdf.
[3] Revenues in the home health industry have grown 48 percent over the past 10 years. BLS Quarter Service Survey (QSS) and Service Annual Survey (SAS). Growth is calculated after adjusting for inflation using the CPI; *Id.*, using Bureau of Labor Statistics' Consumer Price Index (CPI-W) to convert nominal wages to real wages.

3

the district court found the third-party employer regulation to be invalid and vacated it. *Home Care Assn. of America v. Weil*, 76 F.Supp.3d 138 (D.D.C. 2014). Eight months later, the D.C. Circuit reversed, finding the regulation neither arbitrary, capricious, nor contrary to law. *Home Care Assn. of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015). The Court's opinion concluded with the statement "we reverse the district court's judgments and remand for the entry of summary judgment in favor of the Department." *Id*. at 1097.

According to Defendants, the D.C. Circuit's reversal should be interpreted as operating prospectively only, leaving the legally erroneous district court judgment valid and enforceable for the period from January 1, 2015 to at least October 16, 2015, the date of the appellate court's mandate. However, many courts have rejected Defendants' argument.

**II.     CASES AFTER *HOMECARE ASSN. OF AMERICA v. WEIL* INTERPRETING THE EFFECTIVE DATE OF 29 CFR §552.109**

The majority of cases to consider the effective date of the Regulation after *Weil* have determined that the effective date is, was, and always has been January 1, 2015. *Kinkead v. Humana, Inc.,* No. 3:15-cv-1637 (JAM), 2016 U.S. Dist. LEXIS 93410 (D.C. Conn. July19 2016) (holding that the effective date is January 1, 2015, the court stated the "well-established rule that judicial decisions are presumptively retroactive in their effect and operation regarding the effect of the district court's *vacatur* and the reversal by the appellate court"); *Lewis–Ramsey v. The Evangelical Lutheran Good Samaritan Society*, No. 3:16-cv-26, 2016 U.S. Dist. LEXIS 153736, at *12 (S.D. Iowa Sept. 21, 2016) ("the Court adopts the extremely well-reasoned opinion of Judge Meyer [*Kinkead*] and concludes that the effective date of the Final Rule is January 1, 2015"); *Cummings v. Bost, Inc.* No. 2:14-cv-2090, 2016 U.S. Dist. LEXIS 150858, at *20 (W.D. Ark. Nov. 1, 2016)("The Court finds it contrary to general principles of fairness to allow Bost 'to escape liability for nearly a year's worth of overtime wages based on a district court decision that was

4

ultimately deemed to be error.'"); *Collins v. DKL Ventures, LLC*, No. 16-cv-0070, (D.C. Colo. Sept. 21, 2016) ("DOL has consistently maintained that the effective date of the Final Rule is January 1, 2015")(Unreported opinion attached as Exhibit "A"); *Beltran v. Interchange, Inc.*, No. 14-cv-03074, (D.C. Colo. Mar. 31, 2016) ("Plaintiffs have stated a viable claim for overtime for any work performed after January 1, 2015, due to a new DOL regulation, recently upheld by the District of Columbia Circuit Court of Appeals")(Unreported Opinion attached as Exhibit "B"); *Gross v. Statewide Healthcare Servs.*, No. 15-0325-WS-B, 2016 U.S. Dist. LEXIS 62069, fn. 1 (S.D. Ala. May 10, 2016)("Defendants' legal position is potentially hampered by a new DOL regulation whose effective date was January 1, 2015 (two months before Gross's employment concluded), and which specifies that '[t]hird party employers of employees engaged in companionship services within the meaning of §552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act.' 29 C.F.R. § 552.109."); *Jordan v. Maxim Healthcare Servs., Inc.*, No. 15-cv-1372-KMT, 2016 U.S. Dist. LEXIS 34707 (D.C. Colo. Mar. 17, 2016)("29 C.F.R. §552.109 has since been amended, effective January 1, 2015, to specifically provide that the companion exemption does not apply to third party employers."); *Tinsley v. Covenant Care Servs., LLC*, No. 1:14-cv-26ACL, 2017 U.S. Dist. LEXIS 4429, at *14 (E.D. Mo. Jan. 12, 2017)(Finding the effective date to be January 1, 2015, the court stated: "Considering the history and development of the home care industry, it is fair and reasonable for the exemption to benefit home care recipients and their families when the families directly hire domestic service workers; the result is that the ordinary family will not also incur the financial burden of overtime pay. *See Welding*, 353 F.3d at 1217. On the other hand, it would not be fair for an in-home care agency that *generates profit from the overtime work of its employees* to benefit from the exemption without paying overtime to its employees."); *Cowell v. Utopia Home*

*Care, Inc.*, No. 14-cv-736 (LOW), 2016 U.S. Dist. LEXIS 104495, fn 1 (E.D.N.Y. Aug. 8, 2016)("Effective January 1, 2015, the definition of 'companionship services' was amended. *See* 29 C.F.R. § 552.6 (amended Jan. 1, 2015)."); *Bonn-Wittington v. Project O.H.R. (Office of Homecare Referral), Inc.*, No. 16-cv-541(ARR), 2016 U.S. Dist. LEXIS 172767 (E.D. N.Y. Dec. 14, 2016)("Under new regulations effective January 1, 2015, only 'fellowship and protection' services are exempt from FLSA protection. 29 C.F.R. § 552.6 (effective January 1, 2015)");

Defendant's argument is based solely on the rejected premise that the district court's *vacatur* in *American Home Care Ass'n. of America v. Weil*, No. 1:15-cv-573, 78 F. Supp. 3d 123 (D.D.C. 2015), delayed the effective date of the Regulation until the D.C. Circuit Court reversed the decision and issued its mandate on October 13, 2015. *American Home Care Ass'n. of America v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015).

The cases cited above have rejected this argument and the concept of "retroactive liability" advanced by Defendants. The courts have reasoned that unlike statutes and regulations, which generally operate prospectively, judicial decisions are, by their very nature, retrospective in effect, not only as to parties before the court but, generally, as to all others as well. *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 94-99 (1993); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 539-542 (1991). A consequence of this rule is that "the effect of a reversal of judgment 'is to nullify it completely and to leave the case standing as if such judgment . . . had never been rendered, except as restricted by the opinion of the appellate court.'" *CBG Occupational Therapy v. RHA Health Services, Inc.*, 499 F.3d 184, 188, fn. 2 (3d. Cir. 2007) Further, "the principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby. This right, so well founded in equity, has been recognized in the

6

practice of the courts of common law from an early period." *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145 (1919); *Atlanta Journal & Constitution v. City of Atlanta Dept. of Aviation*, 322 F.3d 1298, 1314 (11th Cir. 2003).

Thus, when the district court's decree was reversed by the D.C. Circuit, *Home Care Assn. of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015), that judgment became a nullity and left "the case standing as if such judgment . . . had never been rendered." *CBG Occupational Therapy*, 499 F.3d at 188, n. 2. To hold otherwise would directly contradict the *Arkadelphia* principle "that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has thereby lost." *Arkadelphia*, 249 U.S. at 145.

Furthermore, the D.C. Circuit's *Home Care Ass'n.* opinion says nothing about the effect of its reversal and contains no restrictions or limitations regarding the effective date of the Regulation and as such, well-established common law principles dictate that the reversal rendered the district court's *vacatur* judgment a nullity and put the parties back in the position they would have been but for the wrongful judgment - *i.e.* subject to the third-party employer regulation with its agency set effective date of January 1, 2015. *See Kinkead,* 2016 U.S. Dist. LEXIS 93410 at 7. *See also Lewis-Ramsey, supra; Collins; supra; Cummings, supra; Jordan, supra; Gross, supra; Tinsley, supra.*

Defendants cite two decisions from this circuit that are not authoritative to the issue before the Court. First, the *Bangoy* decision was decided before *Kinkead*. *Bangoy* is further distinguishable as the Court noted that plaintiffs failed to cite any authority addressing the effect of reversal of *vacatur* in *Home Care Assn. of Am. v. Weil, supra*. The *Bangoy* Court did not consider the arguments presented by the plaintiffs in *Kinkead*, *Collins, Lewis-Ramsey, Cummings,*

7

*Jordan, Gross, Tinsley* and the other cited decisions. *See for example, Collins*. (Exhibit "A" at p. 9) ("Thus, [the Supreme Court in] *Beam* directly considers – and chooses to reject – the very arguments that would lead this Court to adopt the Bangoy/MCI approach here. *Beam* makes it unambiguously clear that this Court cannot deem the D.C. Circuit's decision in *Weil* to operate retroactively in some respects, yet treat that decision as affecting the Defendants here only prospectively.") *Bangoy* did not conduct a thorough analysis of the issue and is thus not authoritative.

The *Bangoy* order also erroneously relies on *Natural Res. Defense Council, Inc. v. EPA*, 683 F.2d 752, 761-762 (3d Cir. 1982), for the proposition that because the district court vacated the third party employer rule before its effective date, the regulation became a "nullity" regardless of what happened on appeal. *Natural Res. Def. Council* stands for no such proposition. Rather, in that case, the agency itself voluntarily extended the effective date of one of its regulations just days before it was to go into effect on March 30, 1981. More than a year later, the Third Circuit held that that indefinite extension was invalid because it was not accomplished through notice and comment rule-making and, as a consequence, ordered that the rule be effective *as of its original effective date of March 30, 1981. Id.* 683 F.2d at 767-769. Thus, if anything, the case supports the proposition that, when a court of appeals finds a rule to have been unlawfully delayed, the proper remedy is to reinstate it as of the date it would have gone into effect but for the unlawful delay. The fact that the unlawful delay here was caused by the district court's erroneous judgment rather than an agency's erroneous order is a distinction without a difference.

Finally, the *Bangoy* court asserts that reinstating the January 1, 2015 effective date would "give the rule an impermissible retroactive effect" citing *Fernandez Vargas v. Gonzalez,* 548 U.S. 30, 37 (2000). That case merely recites that "[s]tatutes are disfavored as retroactive when their

application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Id.* at 37.[4] But there is nothing retroactive about recognizing that the effective date of the third-party employer regulation remains January 1, 2015. That date was certainly *prospective* when DOL published the Regulation on October 1, 2013; employers had more than a year to prepare for it. To be sure, the district court's non-final judgment temporarily relieved Home Care Association of the need to make weekly overtime payments in compliance with the Regulation, but that non-final judgment could not confer a 'legal right" on Home Care Association or any other employer not to pay overtime in compliance with the Regulation unless and until the district court judgment was upheld on appeal and became final. As it happened, the judgment was reversed and the pre-existing duty to pay overtime as of January 1, 2015 was confirmed. Such a result is no more "retroactive" than the result in *Natural Res. Def. Council,* 683 F.2d at 767-769, which in 1982 ordered the regulation at issue to be effective as of its original 1981 effective date.

Defendant also cites *Wengerd v. Self-Reliance, Inc.*, No. 3:15-cv-293, 2016 WL 5661972, *2, n.2 (S.D. Ohio, Oct. 3, 2016) in support of its *Bangoy* position. However, the issue in *Wengerd* was not the effective date of the Regulation. Instead, the Court was applying the companionship exemption, 29 U.S.C. §213(a)(15), as it existed before January 1, 2015, to determine whether or not a collective group of employees performed general housekeeping activities that exceeded twenty percent of the total weekly hours worked such that the companionship services exemption

---

[4] A more appropriate citation regarding retroactive regulations is *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204 (1988). In that case HHS promulgated a regulation effective November 26, 1984 that reset Medicare reimbursement rates for the period 1981 forward. HHS had promulgated a similar regulation in 1981 but it was struck down forcing HHS to reimburse providers at the higher rate established by the pre-1981 regulation. The 1984 regulation was explicitly designed to allow HHS to recoup those payments which HHS regarded as excessive. The Supreme Court found that the Congress had not given HHS the authority to publish such retroactive rules and, accordingly, struck down the provision.

would not apply under 29 C.F.R. §552.6.  Further undermining *Wengerd* as authority, the Court, in footnote 2, stated:

> Both named plaintiffs terminated their employment with defendant prior to the new effective date.  Further, both plaintiffs and defendant cite solely to the previous version.  Thus, the version of the regulations effective during plaintiff's employment apply to this case.

Like *Bangoy*, the parties in *Wengerd* did not brief the effective date issue and the *Wengerd* court did not conduct any analysis of the effective date of the Regulation.  Instead, the court simply deferred to the parties' decision to litigate *Wengerd* under 29 C.F.R. §552.6.  As such, *Wengerd* is not authoritative.  The majority of courts that have conducted a thorough analysis of the effective date of the Regulation and the effect of *Weil, supra*, have concluded that the Regulation, and a third-party employer's, like Defendants', obligation to comply therewith, was and is January 1, 2015.

**IV.  DOL'S DECISION TO DELAY ENFORCEMENT ACTIONS HAS NO BEARING ON THE EFFECTIVE DATE OF THE REGULATION OR ON PLAINTIFF'S RIGHT TO ENFORCE THE REGULATION**

Defendants also incorrectly state that ". . . the DOL established a new effective date of November 12, 2015." (Doc. 21, at p.9)  This is simply not true.  There are several problems with Defendants' argument.

First, the argument fails to recognize the difference between the "effective date" of a regulation and the date DOL sets for beginning its "enforcement" efforts.  The one has nothing to do with the other.  That was made clear by DOL in October 2014 (before the district court's *Home Care Assn.* decision) when it published a notice indicating that it would delay enforcement of the new third-party employer rule for six months until July 1, 2015, but that in doing so it was not changing the January 1, 2015 effective date of the rule.  79 Fed. Reg. 60974 (Oct. 9, 2014).  As

10

DOL explained, that announcement meant that, while DOL itself would not take enforcement actions against violations of the new regulations between January 1 and June 30, 2015, the obligation to comply with the regulation would still commence on the January 1, 2015 effective date giving private parties the right to file lawsuits to recover overtime wages for work performed on or after January 1, 2015, even though DOL would not be doing so. *See* Aff. Of M. Hancock, Asst. Administrator for Policy, Wage Hour Division, U.S. DOL, *Home Health Care Assn.*, Doc. No. 27-5 at ¶19-20. (Attached as Exhibit "C"). The *Home Care Assn.* district court, itself, recognized the difference between an effective date and DOL's enforcement date. *Home Care Assn.*, 78 F.Supp.3d. 123, 126-7 (D.D.C. 2015) ("Notwithstanding [DOL's] public pronouncement of non-enforcement of this regulation for six months, 79 Fed.Reg. 60, 974-75, the defendants declined to agree to a voluntary stay of the new definition's effective date [January 1, 2015]."). Thus, DOL's announcement, posted on its website after the Court of Appeals decision, indicating that DOL would begin "enforcement actions" thirty days after the mandate was issued, was of similar effect – *i.e.* it delayed DOL's discretionary enforcement but in no way altered the effective date of the Regulation or the right of private parties to claim wages as of the effective date. It is not uncommon for DOL to draw distinctions between the enforcement rights of private parties and its own discretionary enforcement plans. *See, e.g., Roman Catholic Archdiocese of New York v. Sebelius*, 907 F.Supp.2d 310, 324-325 (E.D. N.Y. 2012) (noting that DOL temporary non-enforcement policy did not deprive plaintiff of standing as the challenged Affordable Care Act regulation had gone into effect); *DeLuna v. NCGA*, 338 F.Supp.2d 649, 658-659 (E.D. N.C. 2004) (discussing a series of DOL opinion letters suspending DOL enforcements of FLSA requirement that employers pay the transportation expenses of foreign workers while simultaneously

11

recognizing that the non-enforcement policy does not alter the employer's legal obligation or the right to private parties to enforce the transportation requirement).

Second, DOL's statements regarding when it will take discretionary enforcement action could not, as a matter of law, alter the effective date of the Regulation. The APA requires the responsible agency to provide an opportunity for notice and comment before changing the effective date of the regulation (unless there is an emergency, in which case the agency must publish a statement of findings and reasons explaining why "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."). 5 U.S.C. §553(b). *See, e.g., Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 n. 28 (D.C. Cir. 1981) (an order deferring effective date of regulation is a "substantive rule" requiring notice and comment if it will have "palpable effects upon the regulated industry and the public in general"); *Comite de Apoyo A Los Trabajadores Agricolas v. Solis*, Ca 09-240, 2011 WL 2414555, at *4-5 (E.D. Pa., June 16, 2011) (vacating delayed effective date issued without notice and comment). Neither the DOL motion for expedited issuance of the mandate nor the DOL webpage purports to change the effective date of the third-party employer regulation or comply with the APA procedures necessary for such a change. That is no doubt because the DOL had no intention of changing the published January 1, 2015 effect date when it announced the delay of its own discretionary enforcement actions.

Finally, and perhaps most importantly, DOL itself continues to regard January 1, 2015 as the effective date of the third-party employer regulation. This is evident not only from the fact that DOL has never published a new effective date, but from pages on its website that continue to state the effective date is January 1, 2015. For example, http://www.dol.gov/whd/homecare/Time-LimitedNon-EnforcementPolicy.htm#1 (visited Jan. 12, 2016), is a fact sheet regarding the third-

party employer regulation and DOL's non-enforcement policy. The page discusses the effect of the "30-day non-enforcement policy that will follow the issuance of the mandate by the Court of Appeals" but states unequivocally that "[t]he effective date for the Home Care Final Rule remains January 1, 2015." *Id.* DOL's website contains numerous other references to the January 1, 2015 effective date of the Regulation. *See, e.g.*, http://www.dol.gov/whd/homecare/non-enforcement_policy.htm; http://www.dol.gov/whd/homecare/agencies-what-are-requirements.htm; http://www.dol.gov/whd/homecare/workers.htm; http://www.dol.gov/whd/homecare/individuals-required-to-pay.htm; http://www.dol.gov/whd/regs/compliance/whdfs25.pdf (all sites last visited Jan. 20, 2016).

Thus, DOL's statements regarding its decision to delay its discretionary enforcement actions lend no support to Defendants' claim that the *Home Care Assn.* case, despite having no merit, nevertheless resulted in a delay of the effective date of the regulation. To the contrary, DOL plainly takes the position that the effective date remains January 1, 2015.

## V. PLAINTIFF'S CLAIMS UNDER OHIO LAW SURVIVE

Plaintiff's claims alleging violation of O.R.C. §411.03(a) and §413.15 are predicated upon a violation of the Fair Labor Standards Act. For the reasons set forth above, Defendants' motion should be denied and Plaintiff's claims under Ohio law should survive.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendants' Motion for Judgment on the Pleadings.

Dated: February 2, 2017                               Respectfully Submitted,

/s/ Andrew Kimble
Andrew Kimble (0093172)
**KIMBLE LAW, LLC**

13

                1675 Old Henderson Road
                Columbus, Ohio 43220
                Telephone: (614) 983-0361
                Facsimile: (614) 448-9408
                Email: andrew@kimblelawoffice.com

                Philip Bohrer (admitted *pro hac vice*)
                Scott E. Brady (admitted *pro hac vice*)
                **BOHRER BRADY, L.L.C.**
                8712 Jefferson Highway, Suite B
                Baton Rouge, Louisiana 70809
                Telephone: (225) 925-5297
                Facsimile: (225) 231-7000
                phil@bohrerbrady.com
                scott@bohrerbrady.com

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on February 2, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel registered in this case. Any counsel not registered for electronic notice of filing with the Clerk of Court will be mailed a copy of the above and foregoing, First Class U.S. Mail, postage prepaid and properly addressed.

                /s/ Andrew Kimble
                Andrew Kimble