# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BOBBI LEE, individually and on behalf of all others similarly situated | Case No. 1:16cv946 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| CAREGIVERS FOR INDEPENDENCE, LLC, *et. al*. | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on: Plaintiff's Motion to Conditionally Certify a FLSA Collective Action, Approve Notice and Expedited Consideration (Doc. 16) and the responsive memoranda thereto (Doc. 24); and Defendants' Motion for Judgment on the Pleadings (Doc. 21), Plaintiff's memorandum in opposition (Doc. 23), and Defendants' reply (Doc. 28).  Plaintiff also filed a Motion for Leave to File Supplemental Authority in Opposition to Defendants' Motion for Judgment on the Pleadings (Doc. 29).  Defendants responded (Doc. 30), and Plaintiff filed a Notice of Supplemental Authority (Doc. 32).  Most recently, Plaintiff filed an Unopposed Motion for Leave to File Supplemental Authority in Opposition to Defendants' Motion for Judgment on the Pleadings and in Support of Plaintiff's Motion for Conditional Certification (Doc. 33).  This matter is now fully briefed and ripe for review.

As an initial matter, the Court **GRANTS** Plaintiff's motions for leave to file supplemental authority (Docs. 29, 33).

I.  **BACKGROUND**

Plaintiff Bobbi Lee filed a complaint on behalf of herself and others similarly situated against Defendants Caregivers for Independence, LLC, James Couch, Phyllis Couch, and James Couch, II, ("Defendants')[1] seeking unpaid overtime wages under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.*, Ohio Minimum Fair Wage Standards O.R.C. § 4111 *et. seq.*, and the Ohio Prompt Pay Act O.R.C. § 41135.15. Plaintiff filed this lawsuit as a collective action under Section 216(b) of the FLSA on behalf of herself and other similarly-situated workers employed by Defendants who were paid hourly. (Doc. 26).

Plaintiff is a former employee of Caregivers for Independence, LLC ("Caregivers") – an entity that provides in-home personal healthcare in Hamilton, Ohio. Plaintiff worked for Caregivers from approximately 2010 to September 29, 2015. (Doc. 26 at ¶ 3). Specifically, she provided companionship services to elderly persons and other persons who, because of illness, injury, or disability, required assistance for themselves. (Id. at ¶ 1). While Plaintiff's hours varied from week to week, it is undisputed that during some work weeks, she worked more than 40 hours. (Docs. 21, 23). As explained more fully herein, Plaintiff brings this action pursuant to the recent changes in the overtime pay requirements imposed by the FLSA specific to companionship employees. 29 U.S.C. § 201 *et seq*.

Generally, the FLSA requires employers to pay their employees time and one-half their regular rates of pay for any hours worked in excess of 40 each week. In 1974, however, Congress amended the FLSA to exempt employers from paying domestic service employees overtime pay. 29 U.S.C. § 213(a). The exemption included "any employee employed in domestic service employment to provide companionship services for individuals who (because

---

[1] Defendant James Couch is a manager of Caregivers and is its registered agent. (Doc. 13, PAGEID 543, ¶¶ 4, 8). Defendant James Couch, II is an owner and manager of Caregivers. (Doc. 13, PAGEID 543, ¶ 6). Defendant Phyllis Couch is also an owner and manager of Caregivers. (Doc. 13, PAGEID 544, ¶ 16).

of age or infirmity) are unable to care for themselves . . . ." 29 U.S.C. § 213(a)(15). The following year, the Department of Labor ("DOL") published regulations which provided guidance in defining "companionship services"[2] and "third party employment."[3] 29 C.F.R. § 552.6; 29 C.F.R. § 552.109. Thus, under the rules, employers like Caregivers were exempt from paying employees like Plaintiff overtime.

In October 2013, The DOL issued a Final Rule amending the companionship services exemption regulations. *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60455 (Oct. 1, 2013). The new regulations modernized the definition of companionship services, and significant to the instant action, removed the exemption applying to caregivers who were employed by third-party employers. *Id*. This change effectively precluded third-party employers, such as Caregivers, from claiming the exemption under the FLSA's overtime provisions for companionship service employees. *See* 29 C.F.R. § 552.109(a) (hereinafter referred to as "Regulation") ("Third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption."). In other words, under the Regulation, employees like Plaintiff are entitled to overtime pay. The DOL chose January 1, 2015 as the effective date of the Regulation, recognizing the rule would impact a diverse group of interested parties. *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. at 60494-95.

Before the Regulation went into effect, the United States District Court for the District of Columbia issued an order finding the DOL exceeded its rule-making authority in eliminating the FLSA exemption for home healthcare workers and vacated the Regulation nationwide. *Home*

---

[2] The term "companionship services" means "the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." 29 C.F.R. § 552.6.
[3] The statutory companionship exemption applied to caregivers "employed by an employer or agency other than the family or household using their services." 29 C.F.R. § 552.6.

*Care Ass'n of Am. v. Weil*, 76 F. Supp.3d. 138 (D.D.C. 2014); *Home Care Ass'n of Am. v. Weil*, 76 F.Supp.3d 123 (D.D.C. 2015). In August 2015, the Court of Appeals for the District of Columbia reversed the district court's decision, and found the Regulation valid. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015). Subsequently, the DOL issued guidance stating that it would not institute enforcement proceedings for violations of the Regulation until 30 days after the Court of Appeals issued its mandate. *See* 80 Fed. Reg. 55029 (Sept. 14, 2015). The Court issued its mandate on October 13, 2015. The DOL then indicated that it would not bring enforcement actions for violations of the Regulation prior to November 12, 2015. *See* Application of the Fair Labor Standards Act to Domestic Service: Dates of Previously Announced 30-Day Period of Non-Enforcement, 80 Fed. Reg. 65646 (Oct. 27, 2015).

Plaintiff alleges she and other similarly situated employees are entitled to overtime pay beginning on January 1, 2015 – the initial effective date of the Regulation. She moves for conditional class certification. In response, Defendants filed a motion for judgment on the pleadings. The issue before the Court is when the Regulation became enforceable, or put another way, what the "effective date" of the Regulation is. Because it is dispositive of the case, the Court addresses Defendants' motion for judgment on the pleadings first.

## II. STANDARDS

### A. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed using the same standards applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief

4

that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

### III. ANALYSIS

Plaintiff contends the Regulation's effective date has always been January 1, 2015, the original intended date of enforcement. (Doc. 23, PageID 445). She argues that judicial decisions apply retroactively. Thus, following Plaintiff's reasoning, when the D.C. Circuit reversed the district court in *Weil*, the Regulation's intended effective date was reinstated. Defendants, on the other hand, contend the earliest the Regulation could have taken effect is October 13, 2015, the

5

date the D.C. Circuit issued its mandate reversing the district court's vacatur in *Weil*. (Doc. 28, PageID 569). Defendants argue Caregivers complied with a valid nationwide vacatur, and should be entitled to rely on a federal district court's decision, even if later overturned on appeal.

The Sixth Circuit has not yet addressed this issue. District courts, including several courts in this district, however, have decided the issue, and a split has formed. The first court to decide the issue was *Bangoy v. Total Homecare Sols., LLC*, No. 1:15-CV-573, 2015 WL 12672727, (S.D. Ohio Dec. 21, 2015) wherein the court found the employer was entitled to rely on the district court's vacatur in *Weil*. The court explained:

> [a]ny other conclusion would put . . . employers, in an untenable position. [Employers] could have complied with the vacated rule at the risk of paying Plaintiff[] overtime wages to which [she was] not entitled if the Court of Appeals affirmed the district court's judgment. Or, [employers] could have done what it did here, rely on the vacatur of the rule but then, according to [the] Plaintiff[], be liable to [her] for FLSA damages if the Court of Appeals reversed the district court's judgment.

*Bangoy*, 2015 WL 12672727 at*3.

Other courts in this district have also recognized the effective date of the Regulation to be a date later than January 1, 2015 despite not analyzing the issue in depth. *See Wengerd v. Self-Reliance*, *Inc.*, No. 3:15-cv-293, 2016 U.S. Dist. LEXIS 136885, at *5 n.2 (S.D. Ohio Oct. 3, 2016); *see also Jasper v. Home Health Connection, Inc.,* No. 2:16-cv-125, 2016 U.S. Dist. LEXIS 71616, 2016 WL 3102226 (S.D. Ohio June 1, 2016). Although the precise issue in *Wengerd* was not the effective date of the Regulation, in discussing the sequence of *Weil* cases, the court stated that due to the reversal on appeal, "the effective date was pushed back to November 12, 2015." *Id.*

More recently, courts have found the Regulation's effective date was after the D.C. Circuit reversed the district court. *See Sanchez v. Caregivers Staffing Servs.*, No. 1:15-cv-01579,

6

2017 U.S. Dist. LEXIS 11259, at *7 (E.D. Va. Jan. 26, 2017) (finding "the DOL rule did not become effective until the D.C. Circuit reversed and issued a mandate, making the reversal effective."); *see also Alves v. Affiliated Home Care of Putnam*, *Inc.*, No. 16-CV-1593, 2017 U.S. Dist. LEXIS 17893, at *8 (S.D.N.Y. Feb. 7, 2017) (indicating the Regulation became effective on October 13, 2015).[4]

Other courts analyzing the issue, however, have reached the opposite conclusion. For example, after the decision in *Bangoy*, another court in this district held "the D.C. Circuit Court's decision in *Weil* requires this Court to find that the new overtime regulations for companionship services were in effect as of January 1, 2015." *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 749196 (S.D. Ohio Feb. 27, 2017). In recognizing judicial decisions are generally applied retroactively, the court surmised, as with any case in litigation, there was a significant possibility the district court's decision in *Weil* would be overturned on appeal; thus, an effective date of January 1, 2015 was a foreseeable consequence of the appellate process. *Id.* at 4.

The two most recent courts to decide this issue also concluded the effective date is January 1, 2015, relying heavily on the court's reasoning in *Dillow*. *See Evans v. Caregivers, Inc.*, No. 3:17-cv-402, 2017 WL 2212977 (M.D. Tenn. May 19, 2017); *see also Guerrero v. Moral Home Services, Inc.*, No. 16-23051-CIV-MORENO, 2017 WL 1155885 (S.D. Fl. March 27, 2017).[5]

---

[4] The Court in *Alves* did not analyze the issue in depth.

[5] The court in *Guerrero* asserted that "[s]ince *Bangoy*, all four district judges to analyze the issue in depth—including one judge in the same district—have concluded that the effective date is January 1, 2015." *Guerrero*, 2017 WL 115885 at *3. The court in *Evans* relies on this statement. *Evans*, 2017 WL 2212977 at *3. This Court's research, however, revealed at least one district court case finding the effective date is October 13, 2015 because "the DOL rule was a legal nullity during the time-frame for which Plaintiff seeks overtime pay." *Sanchez*, 2017 WL 380912 at *2-3.

7

Having found no binding authority, the Court finds the reasoning in *Bangoy* remains persuasive, finding the effective date to be after the D.C. Circuit issued its mandate.[6] While the Court recognizes it appears to be joining the minority of district courts to decide the issue, the undersigned cannot ignore that during the time for which Plaintiff now seeks overtime pay, employers were not technically required to pay overtime pursuant to the vacatur. Accordingly, the Court is empowered to conclude the Regulation was a legal nullity until the D.C. Circuit issued its mandate.

As for retroactive application, the Court is cognizant that judicial opinions are generally applied retroactively. *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). However, as the court in *Bangoy* explained:

> [T]he fact that the DOL has indicated that it will not bring enforcement for violations that occurred before the Court of Appeals' reinstated the rule strongly supports that the rule should not be given retroactive effect in cases between private parties. Indeed, good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons.

*Bangoy*, 2015 WL 12672707 at *3 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40, (1944)). While not binding, this Court likewise finds persuasive the DOL's pronouncement following the mandate that it would not enforce the Regulation until November 12, 2015 as evidence the rule should not be given retroactive effect in cases between private parties.

Plaintiff relies heavily on the retroactive rule established in *Harper*. Reliance on *Harper*, however, presents a critical flaw when applied to this case: it presupposes the interpretation of an existing and valid law. The D.C. Circuit in *Weil*, however, was not applying a new interpretation

---

[6] Following the mandate, the DOL issued a pronouncement that it would not enforce the Regulation until November 12, 2015. This presents the question of whether the effective date is October 13, 2015, when the mandate was issued, or November 12, 2015, when the DOL indicated enforcement would begin. While the undersigned is inclined to find that an enforcement date determined by the DOL does not alter the effective date determined by mandate, the Court need not decide this issue to resolve the matter herein.

of a law already in effect; rather, it implemented a substantive regulation which had never before been in effect. Accordingly, when analyzing the facts presented herein, the Court finds reversal should be applied prospectively, as was found to be the proper application of a similar vacatur. *MCI Telcoms. Corp. v. GTE Northwest. Inc*., 41 F. Supp. 2d 1157 (D. Or. 1999). In *MCI*, FCC regulations were vacated and stayed by the Eighth Circuit. *Id*. at 1162. The Supreme Court subsequently reversed the Eighth Circuit, finding the regulations in question were valid. *Id*. On remand, the Court declined to apply the judicial opinion retroactively, explaining "[t]he court perceives a crucial distinction between applying a new interpretation of a law that admittedly was in effect during the relevant time period, versus applying a substantive regulation that never was in effect to begin with. *Cf. Rivers*, 511 U.S. at 311 (declining to apply new legislative enactment retroactively and reiterating general principle that statutes operate only prospectively); *Bowen v. Georgetown Univ. Hosp*., 488 U.S. 204, 208-09, (1988) (refusing to apply substantive regulations retroactively)." *Id.* at 1163.

The undersigned is not persuaded by the court's explanation in *Dillow* finding "[i]t is disingenuous to suggest that Defendant, or any other similarly situated party, could not anticipate that there was a significant possibility the D.C. District Court's decision in *Weil* would be overturned on appeal." *Dillow*, 1:16-cv-612, 2017 U.S. Dist. LEXIS 27133, at *13. This reasoning, in essence, requires third-party observers such as Defendants, who were neither involved nor in control of the arguments set forth in *Weil*, to nevertheless anticipate retroactive application on appeal and act accordingly.

Finally, although the district court's decision was later reversed on appeal, "[r]eversal of the orders on the merits does not negate the fact that they were valid, effective orders." *MCI*., 41 F. Supp. 2d at 1163. The Court agrees with Defendants in this regard that "[b]oth employers and

9

employees should be able to rely upon judicial vacatur of regulations without fear that on appeal they may be retroactively liable for such reliance." (Doc. 30, PageID 592). To conclude otherwise would effectively render a court's ability to issue future vacaturs meaningless.

Here, the sequence of events created a legal nullity which prevented the Regulation from ever taking effect until the D.C. Circuit issued its mandate on October 13, 2015. Accordingly, the Court concludes the regulation should be applied prospectively, and Defendants were entitled to rely on the decision of the D.C. district court, which vacated the rule before it went into effect.

### III. CONCLUSION

Upon review, the Court finds that Defendants are entitled to judgment as a matter of law. Plaintiff's last day of employment with Defendants was on September 29, 2015. She resigned prior to the effective date of the new Regulation. As such, Plaintiff was an exempt employee not entitled to overtime compensation. Accordingly, Plaintiff's claims under the FLSA and corresponding state law claims under O.R.C. § 4111 *et. seq*., and O.R.C. § 41135.15 fail as a matter of law.

Consistent with the foregoing, Defendants' Motion for Judgment on the Pleadings (Doc. 21) is **GRANTED**. The Ohio Minimum Fair Wage Standards Act is to be construed in accordance with the FLSA. *Douglas v. Argo-Tech Corp*., 113 F.3d 67, 69 n.2 (6th Cir. 1997); Ohio Rev. Code § 4111.03(A). Additionally, Plaintiff's claim based upon the Ohio Prompt Pay Act depends entirely on the resolution of Plaintiff's claims for unpaid overtime. Therefore, dismissal of Plaintiff's FLSA claim requires dismissal of her parallel state law claims as well. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Accordingly, Plaintiff's Motion To Conditionally Certify a FLSA Collective Action, Approve Notice and Expedited Consideration (Doc. 16) is **DENIED**.

**IT IS SO ORDERED**.

                                           *s/Michael R. Barrett*
                                           Michael R. Barrett, Judge
                                           United States District Court